IN THE UNITED STATES DISTRICT COURT FOR

THE DISTRICT OF UTAH

| | |
|---|---|
| KRISTINE PATERSON, an individual, EDWARD SPREEN, an individual, MCCALL SCADLOCK, an individual, UTAH ASSOCIATION OF THE DEAF, and organization, and DOES I-X,<br><br>Plaintiffs,<br>vs.<br><br>SK5 WOLVERINE CROSSING, LLC, an organization, ANDREA AUSTIN, an individual, JORDAN HANKS, an individual, and DOES I-X.<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO STRIKE AND MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTIONS TO AMEND COMPLAINT<br><br>CASE NO. 2:16-CV-1264 TS<br>Judge Ted Stewart |

This matter is before the Court on Defendants' Motion to Strike Opposition to Defendants' Motion for Summary Judgment, Defendants' Motion for Summary Judgment, and Plaintiffs' Amended Motion to Amend Complaint.[1] For the following reasons, the Court will grant Defendants' Motions and deny Plaintiffs' Motion.

I.     BACKGROUND

Kristine Paterson, Edward Spreen, and McCall Scadlock are individuals who are deaf and bilingual in English and American Sign Language. They, along with the Utah Association of the Deaf (collectively, "Plaintiffs"), brought this action under Title III of the Americans with Disabilities Act ("ADA") against SK5 Wolverine Crossing and two individuals involved in

---

[1] The initial motion to amend will be denied as moot based on the filing of the amended motion.

1

managing Wolverine Crossing (collectively, "Defendants"). The Complaint asserts four causes of action under the ADA.

On January 31, 2018, Defendants filed a Motion for Summary Judgment, asserting that Wolverine Crossing is a residential housing community and not a "place of public accommodation," and, therefore, does not fall under Title III of the ADA. Forty-four days later, on March 16, 2018, Plaintiffs filed their response to Defendants' Motion for Summary Judgment (the "Response") without seeking leave to file later than the twenty-eight day deadline set out in the Court's local rules. As a result of this untimely filing, Defendants request that the Court strike Plaintiffs' Response, "deem the facts in Defendants' Motion as admitted, and grant Defendants' Motion for Summary Judgment."[2] Plaintiffs also filed a Motion to Amend Complaint and an Amended Motion to Amend Complaint between the filing of the Motion for Summary Judgment and the Response. The Court will consider all of these Motions together.

## II. DISCUSSION

A. *Defendants' Motion to Strike*

"A memorandum opposing motions filed pursuant to Fed. R. Civ. P. 12(b), 12(c), and 56 must be filed within twenty-eight (28) days after service of the motion or within such time as allowed by the court."[3] "Failure to respond timely to a motion for summary judgment may result in the court's granting the motion without further notice, provided the moving party has established that it is entitled to judgment as a matter of law."[4]

Plaintiffs filed their Response 16 days after the deadline, and have not requested additional time to file from the Court. Strict application of the local rules results in a violation by

---

[2] Docket No. 22, at 3.
[3] DUCivR 7-1(b)(3)(A).
[4] DUCivR 56-1(f).

Plaintiffs as they filed their response outside of the 28-day deadline. Plaintiffs had the option of seeking additional time to file under Federal Rule of Civil Procedure 6(b)(1),[5] but Plaintiffs failed to seek an extension under this rule. Plaintiffs are, therefore, in violation of the local filing rules, and the Court may find that the facts in Plaintiffs' Motion for Summary Judgment should be considered undisputed and grant the Motion "without further notice, provided the moving party has established that it is entitled to judgment as a matter of law."[6] However, in light of the potentially severe implications of striking the Response, the Court will consider whether Plaintiffs' untimeliness was a result of excusable neglect.

"Under Rule 6(b), the court may, in its discretion, accept late filings because the failure to file on time was excusable neglect. . . . [T]he demonstration of excusable neglect is the greatest 'substantive obstacle' under Rule 6(b)."[7] Elaborating "on the meaning of 'excusable neglect,' in the context of the courts' discretionary powers to excuse certain failures," the Supreme Court held that, "'Congress plainly contemplated that the courts *would be permitted*, where appropriate, to accept late filings caused by inadvertence, mistake, or carelessness, as well as by intervening circumstances beyond the party's control.'"[8] In making this determination, the Court

---

[5] "When an act may or must be done within a specified time, the court may, for good cause, extend the time: (A) with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or (B) on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1).

[6] DUCivR 56-1(f); Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order.").

[7] *Stringfellow v. Brown*, 105 F.3d 670, at *1 (10th Cir. 1997) (unpublished) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896–97 (1990)).

[8] *Id.* (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993)) (emphasis in original). "It is not surprising, then, that in applying Rule 6(b), the Courts

must consider all of the relevant circumstances surrounding Plaintiffs' untimely filing, "including 'the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'"[9] Finally, "[c]ontrol over the circumstances of the delay is 'the most important single . . . factor . . . in determining whether neglect is excusable.'"[10]

Plaintiffs argue that their delay was the result of a reasonable mistake and out of their control. Allegedly, "counsel for Plaintiffs was experiencing a significant amount of chaos in his life, including being in the midst of preparation for the California Bar Examination."[11] This preparation included hiring a Bar preparation specialist and staying on a very tight schedule, which "made it exceedingly difficult to deal with the demands that the instant matter placed upon him."[12]

While these arguments show that Plaintiffs' counsel was busy, a busy schedule does not establish excusable neglect.[13] Further, Plaintiffs' counsel was able to file two motions to amend the Complaint, that were a combined fifty pages, before filing the Response.

---

of Appeals have generally recognized that 'excusable neglect' may extend to inadvertent delays. Although inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect, it is clear that 'excusable neglect' under Rule 6(b) is a somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Pioneer Inv. Servs. Co.*, 507 U.S. at 391–92.

[9] *Stringfellow*, 105 F.3d 670, at *1 (quoting *Pioneer Inv. Servs. Co.*, 507 U.S. at 395.)

[10] *Id.* (quoting *City of Chanute v. Williams Nat. Gas Co.*, 31 F.3d 1041, 1046 (10th Cir.1994) (citations omitted)).

[11] Docket No. 23, at 2.

[12] *Id.*

[13] *See Stringfellow*, 105 F.3d at *2 ("[W]here counsel did not even move for an extension of time, his busy workload does not establish excusable neglect under Rule 6(b)(2). If there was

Plaintiffs also argue that, "[a]s further indication of Counsel for Plaintiffs exercising his due diligence . . . Counsel for Plaintiffs did a thorough review of Federal Rule of Civil Procedure 56(f), which contains language that a response to a summary judgment motion can be given within a reasonable time."[14] Plaintiffs' counsel alleges that he and his paralegal then contacted the court clerk "and it was confirmed that the response to the Motion for Summary Judgment could be given within a reasonable time and that no hard and fast deadline was given for the timing of the opposition to the Motion for Summary Judgment."[15] Finally, Plaintiffs argue that this proves that no prejudice has occurred and "the actions of Counsel for Plaintiffs (as well as any oversight regarding deadlines) were made in good faith based on a reasonable mistake based on the language of Federal Rule of Civil Procedure 56(f) as well as representations made by the clerk of this Court."[16]

First, Rule 56(f), entitled "Judgment Independent of the Motion," provides rules governing the actions a court may take in the absence of a motion for summary judgment and requires the court to give "notice and a reasonable time to respond" before proceeding. This rule simply has no application here. The clear intent of this section, along with the clearly outlined time requirement in DUCivR 7-1(b)(3)(A), leaves no excuse for Plaintiffs' reliance on this rule in determining when to file the Response. Moreover, ignorance of the rules and mistakes construing the rules generally do not constitute excusable neglect.[17]

---

'excusable' neglect here, we have difficulty imagining a case of inexcusable neglect.") (internal citations and quotation marks omitted).

[14] Docket No. 23, at 3.

[15] *Id.*

[16] *Id.* at 5.

[17] *See Pioneer Inv. Servs. Co.*, 507 U.S. at 391–92.

Second, counsel's claim that a court clerk represented to him that there was no hard and fast deadline for filing the Response is an unsupported attempt by counsel to shift the blame to someone else, and the Court strongly doubts its veracity. In the unlikely chance this did occur, it was likely the result of a misunderstanding between counsel and the clerk, and counsel's alleged reliance on the clerk's representation would still offer no excuse for counsel's failure to read the local rules.[18]

Finally, Plaintiffs argue that they "should not be punished for their attorney's reasonable mistake that was made in good faith and has caused no prejudice."[19] The Tenth Circuit has held, however, that "it is a fundamental principle of our representational legal system . . . that a party acts through chosen counsel, whose carelessness or ignorance, therefore, generally does not constitute grounds for relief for his client."[20] For example, "a party is not 'punished' for commencing an action beyond the applicable statute of limitations, filing a late notice of appeal, or asserting an issue on appeal not preserved below; the action, appeal, or argument is simply deemed unavailable . . . ."[21]

The same is true here. The Court's enforcement of its rules governing filing times is not a punishment, but a consequence of a failure to comply with the rules or seek other remedies for untimeliness.[22] And, while striking the Response may ultimately result in the granting of

---

[18] *See Kraft Inc. v. United States*, 85 F.3d 602, 609 (Fed. Cir. 1996) (rejecting attempt to blame error on clerk's office where "[a] simple reading of [the rule] by experienced counsel would have made it readily apparent" that the advice was incorrect).

[19] Docket No. 23, at 6.

[20] *See Sec. Nat'l Bank of Enid, Okla. v. John Deere Co.*, 927 F.2d 519, 520 (10th Cir. 1991).

[21] *Id.* at 521.

[22] *See Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1193 (10th Cir. 1998) ("First, the district court did not preclude Ellis from filing a reply to defendants' opposition; it merely enforced its rules governing the timing of submissions and denied any enlargement.").

Defendants' Motion for Summary Judgment, "deeming facts admitted is not the same as imposing the harsh and conclusive sanction of an adverse judgment on the noncomplying party."[23]

Therefore, because Plaintiffs filed the Response over two weeks after the deadline, the reasons for delay were within Plaintiffs' full control, and Plaintiffs still have not sought an extension of time under Rule 6(b), the Court finds that Plaintiffs failed to show excusable neglect and strikes Plaintiffs' Response. The Court will now address Defendants' Motion for Summary Judgment.

B. *Defendants' Motion for Summary Judgment*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[24] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[25] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[26] When a party fails to file a response within the time set out in the local rules, "[t]he court should accept as true all material facts asserted and properly supported in the summary judgment motion. But only if those facts entitle the moving party to judgment as a matter of law should the court grant summary judgment."[27] "To summarize, a

---

[23] *Mendez v. Brown*, 12 F. App'x 784, 786 (10th Cir. 2001).

[24] Fed. R. Civ. P. 56(a).

[25] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[26] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[27] *Reed v. Bennett*, 312 F.3d 1190, 1195 (10th Cir. 2002) (internal quotation marks omitted); DUCivR 56-1(f).

party's failure to file a response to a summary judgment motion is not, by itself, a sufficient basis on which to enter judgment against the party. The district court must make the additional determination that judgment for the moving party is 'appropriate' under Rule 56."[28]

Defendants' list the following as undisputed material facts: (1) all of Plaintiffs' causes of action arise under the ADA; (2) 28 C.F.R. § 36.104 defines "public accommodations" under the ADA; and (3) Wolverine Crossing is a residential apartment complex. The Court shall accept these facts as true as supported by the relevant statutes and the following facts to be addressed as the Court determines whether Defendants are entitled to judgment as a matter of law.

The ADA states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."[29]

> Place of public accommodation means a facility operated by a private entity whose operations affect commerce and fall within at least one of the following categories—
> (1) Place of lodging, except for an establishment located within a facility that contains not more than five rooms for rent or hire and that actually is occupied by the proprietor of the establishment as the residence of the proprietor. For purposes of this part, a facility is a "place of lodging" if it is—
>     (i) An inn, hotel, or motel; or
>     (ii) A facility that—
>         (A) Provides guest rooms for sleeping for stays that primarily are short-term in nature (generally 30 days or less) where the occupant does not have the right to return to a specific room or unit after the conclusion of his or her stay; and
>         (B) Provides guest rooms under conditions and with amenities similar to a hotel, motel, or inn, including the following—
>             (1) On- or off-site management and reservations service;
>             (2) Rooms available on a walk-up or call-in basis;
>             (3) Availability of housekeeping or linen service; and

---

[28] *Reed*, 312 F.3d at 1195.

[29] 42 U.S.C. § 12182(a).

> (4) Acceptance of reservations for a guest room type without guaranteeing a particular unit or room until check-in, and without a prior lease or security deposit.[30]

Defendants argue that Wolverine Crossing, as a residential apartment complex, does not fall under the ADA definition of a "public place of accommodation." Thus, since Defendants are comprised of Wolverine Crossing and its managers, none of Plaintiffs' claims, which are all brought under Title III of the ADA, can be brought against Defendants and judgment as a matter of law should be granted.

The Court agrees.[31] The plain language of the statute does not cover residential apartment complexes and an apartment complex does not fit within the examples listed under "other place of lodging."[32] Further, the legislative history explains that

> [o]nly nonresidential facilities are covered by this title. For example, in a large hotel that has a residential apartment wing, the residential wing would be covered under the Fair Housing Act (42 U.S.C. secs. 3601 et seq., as amended), rather than by this title. The nonresidential accommodations in the rest of the hotel would be covered by this title.[33]

---

[30] 28 C.F.R. § 36.104; 42 U.S.C. § 12181(7).

[31] *See J.H. ex rel. Holman v. Just for Kids, Inc.*, 248 F. Supp. 3d 1210, 1215 (D. Utah 2017) ("Nevertheless, an entity or its facilities must fall within at least one of the general categories listed in § 12181(7) in order to be subject to the prohibitions of § 12182.").

[32] *Phibbs v. Am. Prop. Mgmt.*, No. 2:02-CV-260 DB, 2008 WL 746977, at *3 (D. Utah Mar. 19, 2008) ("Facially, the statute does not include a private residence, such as a residential home or apartment. The Court construes the language 'other place of lodging' consistently with the prior terms 'inn, hotel, motel.' Inns, hotels, and motels are most often occupied temporarily by short-term lodging customers and are not synonymous or even similar to apartments which are occupied by long-term permanent residents. Moreover, the legislative history of the ADA indicates that the FHA, rather than that ADA, governs residential facilities.").

[33] H.R. Rep. No. 101-485(II), at 100 (1990).

With this explanation, the Court finds that Wolverine Crossing is not a "place of public accommodation" and Defendants are not subject to Title III of the ADA.[34] Therefore, the Court finds that Defendants are entitled to judgment as a matter of law.

C. *Motion to File Amended Complaint*

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." "The purpose of the Rule is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'"[35] The Court may refuse to grant leave to amend where it finds evidence of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment."[36]

---

[34] *See Regents of Mercersburg Coll. v. Republic Franklin Ins. Co.*, 458 F.3d 159, 165 (3d Cir. 2006) ("dormitories are more akin to residential units such as apartments and condominiums—which are not covered by the ADA—than transient lodging like inns, hotels, and motels—which are covered under § 12181(7)(A)"); *Indep. Hous. Servs. of S.F. v. Fillmore Ctr. Assocs.*, 840 F. Supp. 1328, 1344 (N.D.Cal. 1993) (finding that apartments and condominiums are not public accommodations); *Radivojevic v. Granville Terrace Mut. Ownership Tr.*, No. 00 C 3090, 2001 WL 123796, at *3 (N.D. Ill. Jan. 31, 2001) (finding that a cooperative apartment was not a public accommodation); *Reid v. Zackenbaum*, No. 05-cv-1569 FB, 2005 WL 1993394, at *4 (E.D.N.Y. Aug.17, 2005) (finding that a residential facility was not a public accommodation); *Lancaster v. Phillips Invs., LLC*, 482 F. Supp. 2d 1362, 1366–68 (M.D. Ala. 2007) (finding that an apartment building is not a public accommodation).

[35] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982)).

[36] *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Minter*, 451 F.3d at 1205 ("Lateness does not of itself justify the denial of the amendment. . . . However, a party who delays in seeking an amendment is acting contrary to the spirit of the rule and runs the risk of the court denying permission because of the passage of time. The longer the delay, the more likely the motion to amend will be denied, as protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend.") (internal citations and quotation marks omitted).

"After a scheduling order deadline, a party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard."[37] In order to show good cause, the movant must

> show the scheduling deadlines cannot be met despite [the movant's] diligent efforts. Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery or if the underlying law has changed. If the plaintiff knew of the underlying conduct but simply failed to raise [the] claims, however, the claims are barred.[38]

Finally, "[p]arties moving under Fed. R. Civ. P. 15 to amend a complaint must attach the proposed amended complaint as an exhibit to the motion for leave to file."[39]

The Scheduling Order in this case, entered April 12, 2017, set the deadline for amendment of pleadings and adding parties for July 10, 2017. Additionally, the close of fact discovery was set for December 31, 2017, the deadline to file dispositive motions was set for January 31, 2018, and a seven day jury trial is scheduled to begin on July 9, 2018.

On March 3, 2018, 236 days past the deadline for amending the pleadings, Plaintiffs filed their First Motion to Amend/Correct Complaint.[40] Thirteen days later, before an opposition to the Motion was filed, Plaintiffs filed a Second Motion to Amend/Correct Complaint.[41] The Court will consider the second motion.

Plaintiffs seek to add the following to their Complaint: (1) Utah Valley University ("UVU") as a defendant; (2) claims under Title II of the ADA; (3) claims under Section 504 of the Rehabilitation Act (29 U.S.C. § 794a); and (4) allegations that Defendants violated the Fair

---

[37] *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015) (quoting *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)).

[38] *Id.* (quoting *Gorsuch*, 771 F.3d at 1240).

[39] DUCivR 15-1.

[40] Docket No. 19.

[41] Docket No. 21.

Housing Act/Fair Housing Amendments Act. Plaintiffs failed to attach a proposed amended complaint to the motion, but they argue that leave to amend is warranted because, "[a]t the time the lawsuit was filed there was no indication of a relationship, express or implied, between UVU and Wolverine Crossing."[42] However, in preparing to respond to Defendants' Motion for Summary Judgment, new facts and information were allegedly discovered that "demonstrate that there is an implied contract between Wolverine Crossing and UVU Department of Housing and Residence Life to provide housing to students enrolled at the University."[43]

These "new facts" that Plaintiffs argue show good cause and support adding UVU as a defendant include statements from Wolverine Crossing's website that Wolverine Crossing is Utah Valley's premier student housing provider, instances of Wolverine Crossing marketing to UVU students, ASL Academic Village's (the area of Wolverine Crossing where ASL residents lived) use of banners and fliers that contained the UVU logo, Academic Village email addresses using the "@uvu.edu" email suffix, and a UVU webpage listing Wolverine Crossing as one of UVU's Housing Sponsors.

Plaintiffs acknowledge that the FAQ on UVU's Housing website states that UVU "does not sponsor, contract, endorse, approve, or certify any housing on or off-campus."[44] However, Plaintiffs argue that UVU's denial of a relationship with Wolverine Crossing "is undermined by other pieces of evidence demonstrating a mutually beneficial relationship beyond a mere community relationship . . . [and] Wolverine Crossing operates jointly with UVU to such a degree of close proximity as though it is a part of UVU regarding housing."[45] In addition to these

---

[42] *Id.* at 2.

[43] *Id.*

[44] *Id.* at 14 (internal quotation marks omitted).

[45] *Id.* at 16.

new facts, Plaintiffs argue that "Defendant Wolverine Crossing will not be unduly prejudiced by the addition of UVU as a Defendant in this action because the new Defendant is subject to the same requirements of the ADA and the FHA/FHAA as Wolverine Crossing,"[46] and thus the Court should find good cause and allow Plaintiffs to file an amended complaint.

Defendants argue that Plaintiffs fail to show good cause for their delay since the "information relied upon for Plaintiffs' Motion is based on emails in Plaintiffs' possession from over 5 years ago as well as brochures and advertisements that are readily available to the public."[47] Additionally, Defendants argue that Plaintiffs were familiar with the facts and legal assertions involved in this case before filing the original Complaint since each of the individual plaintiffs brought administrative actions based on the same facts before the Utah Antidiscrimination and Labor Division in 2014.[48]

Plaintiffs argue, however, that "Defendants rely on mere technical defects in order to make their assertions that Plaintiffs should not be permitted to amend their complaint,"[49] and that the Court should not make a decision based on "procedural niceties," but should allow Plaintiffs to provide all of the issues and all of the parties so that the matter may be decided on the merits.

While the Court agrees that a case should not be quickly dismissed for failure of a party to follow every "procedural nicety," Plaintiffs have been given the maximum opportunity to present the merits of the case but failed to do so in the time given and have failed to show good

---

[46] *Id.* at 3.

[47] Docket No. 25, at 3–4.

[48] "These actions were based on fair housing claims . . . [and], by the time the complaint was filed in this action . . . Plaintiffs' complaint and legal claims should have already been refined to posture their best claims based on facts already discovered, reviewed and established . . . ." *Id*. at 5.

[49] Docket No. 26, at 3.

cause for why they should be given leave to amend so long after the deadline to amend the pleadings.

Plaintiffs argue that new facts were discovered, but the Court fails to see how the facts provided by Plaintiffs are new. All of the "new facts" were readily discoverable in UVU's and Wolverine Crossing's marketing materials and on their websites. For instance, it is hard to believe that Plaintiffs just realized that Wolverine Crossing uses UVU's mascot and colors to market to UVU students and is listed on UVU's website as a housing sponsor when Plaintiffs' Complaint and the attached exhibits contain pictures of Wolverine Crossing's logo, the text from an email in which a tenant stated "I was relaxed, because I knew that Wolverine Crossing was affiliated with ASL Academic Village and UVU,"[50] and referred to student housing agreements signed by Defendants. Even if Plaintiffs did fail to make the connection and assert an implied contract between Wolverine Crossing and UVU, the facts showing the underlying conduct are not new and the implication of those facts should have been realized long before Plaintiffs began preparing a response to Defendants' Motion for Summary Judgment. As such, Plaintiff failed to show good cause for their delay in moving to amend.

As stated in *Pallottino v. City of Rio Rancho*,

> Liberality in amendment is important to assure a party a fair opportunity to present his claims and defenses, but equal attention should be given to the proposition that there must be an end finally to a particular litigation. Much of the value of summary judgment procedure in the cases for which it is appropriate . . . would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back along thereafter and fight on the basis of some other theory.[51]

---

[50] Docket No. 2, at 16.

[51] 31 F.3d 1023, 1027 (10th Cir. 1994) (internal citations and quotation marks omitted).

To allow for an amended complaint to be filed so long after the deadline to amend the pleadings based on facts and theories that were known or should have been known by Plaintiffs would reward Plaintiffs dilatory behavior and, as stated in *Pallottino*, dissipate the value of the summary judgment procedure.

Therefore, the Court finds that Plaintiffs failed to show good cause for seeking modification of the scheduling order. With Plaintiffs' failure to meet the Rule 16(b)(4) standard, there is no need to consider whether Plaintiffs met the requirements for leave to amend under Rule 15(a).[52] However, even if the Court was to conduct a Rule 15(a) analysis, Plaintiffs' Motion would fail due to undue delay and prejudice. Plaintiffs essentially wish to start over with a brand new case, composed of new claims and a new defendant, after the close of fact discovery and after the dispositive motion deadline has passed. With only three months before the scheduled trial, this would result in prejudice to Defendants. Finally, Plaintiffs have done nothing to show that their failure to seek amendment before the deadline was a result of anything other than undue delay.

---

[52] *Perez v. Denver Fire Dep't*, --- F. App'x ---, 2018 WL 739380, at *3 (10th Cir. 2018) ("If good cause is not shown under Rule 16(b)(4) to modify the scheduling order, the district court need not consider whether the requirements for leave to amend under Fed. R. Civ. P. 15(a) have been satisfied.").

III.     CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Strike Opposition to Defendants' Motion for Summary Judgment (Docket No. 22) and Defendants' Motion for Summary Judgment (Docket No. 17) are GRANTED. Plaintiffs' Motions to Amend Complaint (Docket Nos. 19 and 21) are DENIED.

DATED this 1st day of May, 2018.

BY THE COURT:

Judge Ted Stewart